The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* BORRELLI & VITELLI (No. 3471)[1]

United States Court of Customs and Patent Appeals, January 25, 1932

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Walden & Webster* (*J. L. Klingaman* of counsel) for appellee.

[Oral argument December 9, 1931, by Mr. Folks and Mr. Klingaman]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise in this case consists of two classes of articles. The first class is what are called silver filigree pendants which are

---

[1] T. D. 45467.

292

quite elaborate, each being comprised of several loosely connected parts with dangling attachments, and completed to the extent that it is only necessary to provide some kind of fastener for the purpose of attaching it to a necklace or to the ear. In the condition imported, when the attachment is made, the articles are worn as pendants or earrings.

The second class is completed silver filigree balls with a silver wire running through each ball, each end of such wire being formed into a loop (unsoldered) so that the balls can be connected together without additional manufacture. .

The collector classified the merchandise under the first part of paragraph 1428 of the Tariff Act of 1922 and assessed it with duty at the rate of 80 per centum ad valorem.

The importers protested the classification of the collector and claimed the merchandise to be dutiable under several different paragraphs of the said tariff act, but in this court rely only upon their claim that the merchandise is dutiable under the last provision of paragraph 1428, *supra*.

The pertinent competing portions of the paragraph follow:

PAR. 1428. Jewelry, commonly or commercially so known, finished or unfinished, of whatever material composed, valued above 20 cents per dozen pieces, 80 per centum ad valorem; * * * stampings, galleries, mesh, and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any of the foregoing articles in this paragraph, 75 per centum ad valorem.

The United States Customs Court, First Division, sustained the protest and held the merchandise dutiable as "materials of metal * * * suitable for use in the manufacture of any of the foregoing articles" under the last portion of said paragraph 1428.

From the judgment of the court below, so holding, the Government has appealed to this court. The sole question presented is whether or not the pendants and balls involved are unfinished jewelry. If they are, it is not disputed that they should be classified under the first provision of paragraph 1428 rather than under any other claimed provision.

The Government relies upon the cases of *Hecht Pearl Co. (Inc.) v. United States*, 18 C. C. P. A. (Customs) 171, T. D. 44375, and cases cited therein; *United States v. Flory & Co.*, 15 Ct. Cust. Appls. 156, T. D. 42219, and *Konishi Kotakudo Co. (Inc.) v. United States*, 17 C. C. P. A. (Customs) 355, T. D. 43798.

There was but one witness who testified, one of the importers, Francis Xavier Borrelli. We quote a material portion of his testimony:

Q. What do you do with it?—A. We mount it with beads. We make earrings, etc.

Q. In other words, various kinds of articles to be worn on the person?—A. Yes, sir. We manufacture them ourselves.

Q. Taking these balls; would they be used for more than one particular kind of article?—A. Yes, sir.

Q. For instance, for necklaces and also other things?—A. Yes, sir.

Q. Would they be used in earrings?—A. We use them in earrings and for pendants and necklaces.

Q. How about the drops? What do you use them for—or the pendants, as you call them?—A. Mostly for earrings.

Q. What do you do to them in order to make them usable for earrings?—A. We attach a top.

Q. What is that top? What does it consist of?—A. Just the same metal, silver.

Q. A piece of metal to fasten to the ear?—A. Yes.

Q. And then this is attached to that?—A. Yes, sir.

Q. In the case of the balls; what other materials do you use with them?—A. Real stones, imitation stones, pearls. We make all kinds of combinations.

Cross-examination by Mr. GEISLER:

X Q. Mr. Borrelli, I show you the drops in Exhibit 2, the large silver one, or it is supposed to be silver.—A. It is silver.

X Q. That you say is used for what purpose?—A. Mostly for earrings.

X Q. And that article in itself, as it stands, is complete in itself, is it not?—A. No.

X Q. Excepting the mere putting on of the wire for the ears?—A. Yes, sir.

X Q. You do not have to do anything to this particular thing?—A. We have to put a top on.

X Q. Exclusive of the top that is a finished article?—A. Yes.

X Q. All that is required is to put the desired top on; if it is for a piercing earring you put the wire on, and if it is to be pressed on, you put on the button?—A. Yes, sir.

X Q. Otherwise it is complete?—A. Yes, sir.

X Q. And that relates to the three tops—the same?—A. Yes.

X Q. So you call that jewelry, do you not, unfinished jewelry?—A. Yes, sir.

X Q. With reference to these little balls, what did you say they were used for?—A. We make all kinds of combinations with beads.

X Q. They are also for jewelry?—A. Yes, sir.

X Q. And you merely connect them together with a loop?—A. Some with a loop, and some with beads; all kinds of things, ourselves.

X Q. Do you use any of them separately?—A. No.

X Q. But as far as the bead itself is concerned, that is complete?—A. That is complete.

X Q. All that has to be done is to connect them together for the purpose you want to use them for?—A. Exactly.

X Q. They are used for jewelry entirely, are they not?—A. Yes, sir.

X Q. As I understand your testimony, it amounts to—it is unfinished jewelry?—A. Yes, sir.

Redirect examination by Mr. KLINGAMAN:

R Q. Which ones did you call unfinished jewelry?—A. Both, I call that.

Mr. KLINGAMAN. I move to strike that out. That is the question for the court, as to whether it is unfinished jewelry.

Judge McCLELLAND. Objection overruled.

Mr. KLINGAMAN. Exception.

We attach but little if any importance to the statement of the witness that the merchandise is unfinished jewelry, but the testimony shows the nature, construction, and use of the articles, which is important.

We think the case of *United States* v. *Cohn & Rosenberger (Inc.)*, 19 C. C. P. A. (Customs) 137, T. D. 45259, known as the "bone-rose case," is controlling as to the proper classification of the pendants. In that case the bone-rose pendants were finished to the same extent and used for the same purposes as those at bar, except that they might also be used for brooches. Our decision in that case was handed down after the lower court's decision in the case at bar. We held the bone-rose pendants to be unfinished jewelry and said:

> It is sometimes difficult to determine when an article is unfinished jewelry, a part of jewelry, or material suitable for the making of jewelry, and it is more difficult to lay down a hard and fast rule for the guidance of customs officials in classifying articles where a consideration of this question is involved. Some articles are parts of jewelry and, at the same time, unfinished jewelry.
>
> *      *      *      *      *      *      *
>
> We can readily conceive, however, of parts of jewelry that could hardly be said to be unfinished jewelry. A very small and inconsequential though completely finished part of a definite article of jewelry might not be regarded, for tariff purposes, as the unfinished jewelry. The sill of a house is not an unfinished house, though it is part of the house.
>
> In the case at bar the carved bone rose is a complete article, ready to wear, except for some means of attaching the same to the person or clothing of the wearer. It is finished with that exception, and the statute made specific reference to "jewelry * * * finished or unfinished." A brooch, an earring or a pendant of the material at bar, finished, would clearly be jewelry. *United States* v. *Doragon Co.*, 13 Ct. Cust. Appls. 182, T. D. 41051; *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 190, T. D. 41052; *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T. D. 42219.
>
> *      *      *      *      *      *      *
>
> In the case at bar it is conceded that the bone articles are not so manufactured as to be dedicated to the making of one particular article of jewelry such as an earring alone, but that they are so far manufactured as to be dedicated to the making of earrings, brooches, and pendants, all three of which finished articles are conceded to be jewelry.
>
> In *Konishi Kotakudo Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 355, T. D. 43798, this court, in speaking of the doctrine of exclusive use in determining when one thing was the manufacture of another, said: "This exclusive use is not necessarily confined to any one article, but may cover 'a particular kind or class of articles,'" and cited *A. H. Ringk* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769. If the language used in that case is applied to the case at bar, it would seem proper to hold that earrings, brooches, and pendants belong to "a particular kind or class" of jewelry articles.
>
> While holding the imported merchandise to be unfinished jewelry, upon this record, is going a step further than is affirmatively held in any case cited, we believe that the unfinished-jewelry provision in paragraph 1428 is sufficiently broad to apply to the importation at bar. It would seem to result in an anomalous conclusion to hold that the bone rose at bar would be unfinished jewelry, if,

when finished, it was worn as a brooch only, and refuse to hold the same to be unfinished jewelry because of the fact that, when finished, it was finished into and worn as a brooch, or a pendant, or an earring. Indeed, it is within the common knowledge that some brooches, with pins, are worn as pendants. The statute does not say "unfinished brooches," or "unfinished earrings" or "unfinished pendants." It provides for "unfinished jewelry" and, we think, aptly describes the merchandise at bar.

Upon the authority of our decision in *United States* v. *Cohn & Rosenberger (Inc.), supra,* we hold the pendants to be unfinished jewelry.

Applying the rule and reasoning of the same case to the second class of merchandise herein involved, silver filigree balls, we conclude that they are not unfinished jewelry, since they have not been advanced in the process of manufacture beyond the material stage. They may find their way into a necklace, or, as the witness says, they may be and are mounted with beads and are used for making "other things." The witness stated, referring to the balls, that "We make all kinds of combinations with beads," and that he connected them, "Some with a loop, and some with beads; all kinds of things, ourselves."

In view of our holding and full discussion in the bone-rose case above referred to, further discussion or citation seems unnecessary to support our conclusion that the balls are not unfinished jewelry and that the court below correctly sustained the protest as to them.

The judgment of the United States Customs Court is *reversed* as to the pendants and *affirmed* as to the balls.